# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Leo B. Marchetti, <br><br> Plaintiff <br><br> v. <br><br> Kinross Gold U.S.A., Inc., <br><br> Defendant | 2:15-cv-02095-JAD-VCF <br><br> **Order Granting Defendant's Motion for Summary Judgment** <br><br> [ECF No. 21] |

Leo Marchetti applied to work as a security guard or technician at defendant Kinross's gold mine in rural Round Mountain, Nevada. Marchetti soon learned that he didn't get either job and that Kinross had awarded them to others. Marchetti believes he was passed up because he had a knee disability, so he brings this case against Kinross alleging a claim under the Americans with Disabilities Act ("ADA"). Kinross moves for summary judgment, arguing that when it denied Marchetti's online application it did not even know that he had a disability, much less discriminate against him because of it. And Marchetti's four-page opposition offers no evidence that he had a disability, that he was qualified for the positions he applied for at the mine, or that Kinross's proffered reasons for hiring others was pretext for discrimination. I therefore grant Kinross's motion.

**Background**

Kinross owns a working gold mine in Round Mountain, Nevada. Round Mountain is tucked away deep in the Nevada desert—a four-hour drive from either of the state's major cities, Reno and Las Vegas. Marchetti lives outside Las Vegas in Pahrump, Nevada, almost four hours from Kinross's mine.

Marchetti was not deterred by the distance, and in the winter of 2013, he applied online for several positions at Kinross. He wanted to work as a lab technician, a security guard, or a warehouse technician at the mine. But Kinross decided to hire other people for these positions. Marchetti

believed that he was passed up because of his disability, so he filed a charge of discrimination with the Nevada Equal Rights Commission in late 2014.[1]

Kinross offers evidence that it gave the jobs to others for good reasons that had nothing to do with Marchetti's disabilities. The lab and warehouse jobs went to four people who lived in Round Mountain and either already worked for Kinross, or had spouses who did.[2] Kinross's evidence shows that its hiring policies give preference to those who live in the area or have connections there because, understandably, the company has difficulty retaining employees in that remote locale.[3] Kinross eliminated the security-guard positions for budget reasons.[4]

Not only does Kinross deny that disability played a role in its decision to not hire Marchetti, Kinross offers evidence that it never reviewed his cover letter or met him—so when it made its hiring decisions, Kinross could not know that he had a disability, much less discriminate against him for it.[5]

As to whether Marchetti actually has a disability, in his cover letter to Kinross, he made sure to let the company know that he "[wa]s disabled]" and that, although he "walked with a cane," he could do still do these jobs.[6] But Marchetti offers no other evidence that he has a disability, save an unauthenticated photocopy of a DMV handicap placard with his name on it.[7] Notably, Marchetti offers no proper affidavit or other evidence explaining the nature of his alleged disability.[8]

---

[1] ECF No. 21-18.

[2] ECF Nos. 21-1 at ¶ 5; 21-3; 21-11.

[3] ECF No. 21-1 at ¶ 4.

[4] ECF Nos. 21-12.

[5] ECF No. 21-1 at ¶ 6–7.

[6] ECF No. 21-2.

[7] ECF No. 22-3.

[8] Marchetti's affidavit consists of a single relevant sentence: he promises that "to the best of his knowledge and belief," everything in his opposition is true. ECF No. 22-1. To the extent that Marchetti invites me to treat this affidavit as incorporating every factual statement made in his

Ultimately, Marchetti was given a right-to-sue letter and filed this lawsuit, alleging a single claim for disability discrimination under the ADA.

**Discussion**

**A.     Summary-judgment standards.**

The legal standard governing the parties' motions is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[9] An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.[10] A fact is "material" if it could affect the outcome of the case.[11]

When considering a motion for summary judgment, I view all facts and draw all inferences in the light most favorable to the nonmoving party.[12] The purpose of summary judgment is "to isolate and dispose of factually unsupported claims"[13] and to determine whether a case "is so one-sided that one party must prevail as a matter of law."[14] It is not my role to weigh evidence or make credibility determinations.[15] If reasonable minds could differ on material facts, summary judgment is inappropriate.[16]

If the moving party shows that there is no genuine issue as to any material fact, the burden

---

opposition, I decline to do so.

[9] FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[11] *Id.* at 248.

[12] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[13] *Celotex Corp.*, 477 U.S. at 323–24.

[14] *Anderson*, 477 U.S. at 252.

[15] *Id.* at 249, 255.

[16] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

shifts to the nonmoving party, who must "set forth specific facts showing that there is a genuine issue for trial."[17] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; the nonmoving party "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[18]

**B.     Marchetti's evidence does not create a triable issue for the jury on his disability claim.**

To establish an ADA claim based on discriminatory hiring, Marchetti must show (1) that he is disabled within the meaning of the ADA; (2) that he was qualified for the positions that he applied for; and (3) that he was discriminated against because of his disability.[19] To prove the discrimination prong, Marchetti must offer evidence "that gives rise to an inference of unlawful discrimination, either through the framework set forth in *McDonnell Douglas Corp. v. Green* or with direct or circumstantial evidence of discriminatory intent."[20] Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference."[21]

Alternatively, under the *McDonnell Douglas* analysis, the plaintiff must first establish a prima facie case of discrimination by showing that (1) he belongs to a protected class, (2) he applied and was qualified for a job for which the employer was seeking applicants, (3) despite his qualifications, he was rejected, and (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of his qualifications.[22] Once the plaintiff establishes these prima facie elements, the burden shifts to the employer to show "some legitimate,

---

[17] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 323.

[18] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[19] *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (citation omitted).

[20] *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003), *as amended* Jan. 2, 2004 (internal quotations omitted).

[21] *Id.*

[22] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

nondiscriminatory reason for the employee's rejection."[23] If the employer does so, the presumption raised by the prima facie case is rebutted, and the burden shifts back to the plaintiff to prove that the employer's asserted reasons for not hiring him are mere pretext.[24] "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."[25]

Marchetti's ADA claim is a nonstarter for several reasons, any of which would warrant summary judgment against him. First, he fails to make his prima facie showing. Marchetti has not established that he has a disability under the ADA. There is virtually no evidence that Marchetti had "(A) a physical or mental impairment that substantially limit[ed] one or more of [his] major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment," as the ADA requires.[26] Marchetti's evidence on this point consists of an unauthenticated photocopy of a handicap placard with his name on it. Even if I were to consider this, it is dated April 2014—months after Kinross rejected him.[27] There is thus no evidence indicating that Marchetti had a disability when it mattered: the day he applied to Kinross in late 2013.[28] Nor has Marchetti offered evidence that he was qualified for the positions that he applied for[29] or that the positions remained open and that Kinross continued seeking applicants like

---

[23] *Id.*

[24] *Id.* at 804

[25] *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

[26] 42 USC § 12102(2).

[27] ECF No. 22-2.

[28] Although Marchetti stated that he had a disability in the cover letter he sent Kinross, the undisputed evidence shows that Kinross did not see that letter prior to making its hiring decisions. ECF No. 1 at 3. And even if it had, this is too little evidence for a reasonably jury to find that Marchetti was perceived as having a disability.

[29] For example, the security-guard position required one year of security experience; Marchetti's resume reveals that he had no security experience whatsoever. ECF No. 22-5 (noting that Marchetti has worked as an amateur radio teacher in Nye County, a massage therapist, and a jeweler—but not a security guard for longer than a year or as a mine technician). Similarly, Marchetti admitted in

Marchetti.[30]  This is enough to warrant judgment against him.

Second, even if Marchetti had made his prima facie showing, he has not rebutted Kinross's nondiscriminatory reasons for offering the positions to other candidates.  Kinross gave preference to people who lived near Round Mountain or had connections there; it gave preference to applicants who had worked for Kinross before or had family members at the company.  Every person that Kinross hired met these criteria, except for Marchetti.  And, as Kinross points out, Marchetti was not a good candidate for other reasons: he had not worked in any relevant field for more than a decade.[31]  This is another ground for granting summary judgment against Marchetti.

## Conclusion

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's **motion for summary judgment [ECF No. 21] is GRANTED.**  The Clerk of Court is instructed to enter judgment in favor of Kinross Gold U.S.A., Inc. and against Leo B. Marchetti and close this case.

Dated this 17th day of May, 2017.

_____
Jennifer A. Dorsey
United States District Judge

---

deposition that he could not walk while carrying 50 pounds, and the lab and warehouse jobs required that he "repeatedly" lift these loads.

[30] Kinross offers undisputed evidence that it filled each of the positions that Marchetti applied for, save the security-guard position.  And Kinross's undisputed evidence shows that it eliminated the security-positions, so they did not remain open.

[31] ECF No. 22-5.